[No. B233996. Second Dist., Div. Eight. Oct. 19, 2012.]

ALLEN HODJAT et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

2

**COUNSEL**

Karlin & Karlin and Marc A. Karlin for Plaintiffs and Appellants.

Robie & Matthai, Michael J. O'Neill, Natalie A. Kouyoumdjian, Marta A. Alcumbrac; Crandall Wade & Lowe and James L. Crandall for Defendant and Respondent.

## OPINION

**BIGELOW, P. J.**—Allen and Helle Hodjat[1] appeal from the grant of summary judgment on their breach of contract and bad faith complaint against State Farm Mutual Automobile Insurance Company (State Farm). We affirm.

## FACTS

Hodjat owns a used car business called "Luxury Auto Sports" located in Santa Fe Springs. He and his wife purchased a damaged 2006 BMW M5 at an auction on October 18, 2007, which they intended to repair and sell. They insured the car with State Farm. The Hodjats' policy required they cooperate with State Farm in any claim and provided that "[t]here is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy."

Hodjat reported the BMW stolen on March 31, 2009, and State Farm conducted an investigation into the theft. Hodjat and his wife submitted several statements regarding the theft and condition of the car.

### I.   *Statements Made by Hodjat*

#### A.   *March 31, 2009 Report*

Hodjat first reported the BMW stolen on March 31, 2009. According to State Farm's activity log, Hodjat told the State Farm agent that he parked the car at his office in Santa Fe Springs on Friday, March 27, 2009, between 1:00 and 2:00 p.m. He only noticed that the BMW was missing on Tuesday, March 31, 2009, although he went by his office that Saturday. Hodjat stated he bought the BMW for $65,000 in cash at an auction. He took the title documents to the Department of Motor Vehicles (DMV) in 2007 but did not realize the title transfer had not gone through. He also informed State Farm that the BMW had front-end damage when he bought it but he took the car to Mexico to get the body damage repaired for $1,800. He could not recall what the name of the repair shop was in Mexico.

#### B.   *Affidavit of Loss*

In an April 23, 2009 affidavit of vehicle theft submitted to State Farm, Hodjat stated he purchased the car in October 2007 for $28,000 from

---

[1] Because Allen Hodjat was the primary actor in this case, we will refer to him as Hodjat and to his wife as Helle Hodjat to the extent necessary.

Manheim Riverside. He also stated he last saw the BMW on Saturday, March 28, 2009, at 11:00 a.m. when he showed a couple a different car they were interested in buying. Hodjat specified that there was "front rite [*sic*] damage" to the BMW as the result of an accident in May 2008, and repairs were made by the Go Original Collision Care body shop for $3,000. He also stated that the BMW was in "excellent" condition and had "standard equipment [with] original BMW parts."

### C. Recorded Statement

Hodjat submitted to a recorded statement on May 11, 2009. He stated he purchased the BMW for around $26,000 or $27,000. The car was damaged on the front and passenger sides at the time it was purchased but it was drivable. It was sent to Mexico to be repaired by someone named "Juan" sometime in December 2007 or January 2008. Hodjat paid him approximately $8,000 for the repairs. Ghadir "Sam" Oloumi, who is a friend of a friend, then borrowed the BMW while Hodjat was in Europe. The BMW was involved in an accident while Sam was driving it. Sam originally told Hodjat he would have the BMW repaired but he ultimately did not do so. Hodjat claimed he paid $3,000 to Go Original body shop to have the BMW repaired but did not submit a claim to State Farm for the repairs.

### D. Examination Under Oath

On October 2, 2009, Hodjat and his wife submitted to an examination under oath. Hodjat testified that the damage to the BMW was extensive at the time he bought the car and he had to tow it to his business. He paid a man named Juan to bring the BMW to Mexico for $1,800 to be repaired and he ultimately paid Juan $5,040 for the repairs. Hodjat also testified that Ghadir "Sam" Oloumi was driving the BMW when it was involved in an accident in February 2008. Hodjat testified he paid $4,000 to Go Original body shop to fix the BMW and that it was at the body shop up to one year. Hodjat stated he took the BMW back to Go Original body shop in February of 2009 for some persistent problems and the car was stolen the next month. Hodjat stated he drove the BMW on March 28, 2009. He told Whittier police that he last saw the BMW on March 30, 2009.

Helle Hodjat testified that she saw the BMW the day her husband bought it and that it was in good condition. She further testified that her husband would not have his cars repaired in Mexico, and that he would have told her if he did.

### E. Declaration in Opposition to Motion for Summary Judgment

In opposition to State Farm's motion for summary judgment, Hodjat submitted a declaration that stated he purchased the BMW for approximately

$28,000 from Manheim Riverside in October 2007. The BMW was damaged and he paid approximately $8,500 to repair it and it was repaired enough to display for sale. He estimated the car's wholesale value to be $65,000 and its retail value to be $85,000. Hodjat further stated that while he was out of the country, Sam, who was helping him sell the car, had an accident while driving it. Because Sam repaired the car at his own expense, no claim was submitted to State Farm. Hodjat confirmed that he parked the car in front of his office on Friday, March 28, 2009, and noticed it was missing when he returned on Tuesday, March 31, 2009. He immediately reported the theft to the Whittier Police Department and to State Farm.

II.  *Investigation by State Farm*

State Farm requested information from the Hodjats by letters dated May 19, 2009, June 1, 2009, and June 10, 2009. It requested the Hodjats provide it with all sets of keys for the BMW, contact information for Sam, purchase documentation for the BMW, maintenance records, any lienholder payment history and cell phone records from March 28, 2009, through April 2, 2009. In late June 2009, Hodjat provided some, but not all, of the documents requested by State Farm. In particular, he submitted DMV title documents reflecting a sale price of between $25,000 and $25,199. The certificate of title he provided had four dates on it, which all appeared to be altered, and the odometer reading looked to be altered as well. Hodjat also submitted loan documentation for the car from Capital One Auto Finance, though he had initially stated he paid cash for it. When State Farm contacted Capital One, it was advised Capital One did not have any records regarding the BMW at issue or about Hodjat. Further, the application number provided by Hodjat was not consistent with the numbers Capital One usually assigned to an application.

State Farm's investigation showed that the BMW at issue had been involved in an accident in 2006, when it suffered extensive front-end damage. The owner of the BMW at the time made a claim to his insurance company, Interinsurance Exchange of the Automobile Club (AAA). AAA estimated it would cost $46,000 to repair the damage. AAA denied the claim when it discovered the policy was not in effect when the accident occurred and no repairs were made to the BMW. At the time the Hodjats purchased the BMW, it still had significant front-end damage.

State Farm's investigation also revealed that a claim was made on the BMW in February 2008 with Sentry Insurance. The BMW was purportedly involved in an accident with a car insured by Sentry. Sentry Insurance advised State Farm that the BMW was driven by Ghadir "Sam" Oloumi at the time of the accident and it was taken to Go Original body shop

afterwards. Go Original body shop was managed by Michael Kohl. When Sentry's investigator went to Go Original body shop to inspect the damage, the BMW was filthy. Based on its condition, Sentry's investigator concluded the BMW had not been driven for a very long time, much less in February 2008, when the accident supposedly took place. Sentry's investigator estimated the damage to the BMW to be in excess of $30,000. After looking at AAA's files and comparing the damage to the BMW from the 2006 accident, Sentry concluded the damage sustained in 2008 was identical to the damage in 2006. It ultimately denied the claim for fraud.

State Farm's investigation also showed that Ghadir "Sam" Oloumi had been previously indicted and pled guilty to three counts of insurance fraud. The Department of Consumer Affairs filed an accusation against Go Original Collision Care in July 2008 for insurance fraud. Go Original's business licenses and rights were revoked as part of a stipulated settlement and disciplinary order.

State Farm notified Hodjat by letter dated June 17, 2009, that it was evaluating the claim under a reservation of rights based on its investigation to date. It retained an attorney, Lawrence Esten, to provide a legal opinion as to whether coverage existed for this claim. Esten opined that the Hodjats' claims should be denied. On February 22, 2010, State Farm denied the claim based upon State Farm's conclusion that the Hodjats had failed to cooperate in the investigation and had made material misrepresentations regarding their claim.

III. *Lawsuit*

Hodjat and his wife filed suit against State Farm on May 3, 2010, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. State Farm moved for summary judgment on January 10, 2011, on the grounds that the Hodjats made material misrepresentations regarding their theft claim and failed to cooperate in the investigation. In the alternative, State Farm moved for summary adjudication on the breach of the implied covenant of good faith and fair dealing claim because it reasonably relied on the advice of counsel. The trial court granted summary judgment on April 22, 2011, concluding that the Hodjats "made material misrepresentations during the claim investigation process." The trial court further concluded that the denial of the Hodjats' claim was justified and there was no genuine issue as to whether State Farm was liable on the claim. Notice of entry of judgment was served on June 1, 2011, and the notice of appeal was filed on June 24, 2011.

## DISCUSSION

### I. *Standard of Review*

We review this matter de novo, affirming the grant of summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court." (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) These steps include identifying the issues framed by the pleadings, determining whether the moving party has negated the opponent's claims, and determining whether the opposition has demonstrated the existence of a triable, material factual issue. (*Id.* at pp. 1064–1065.)

A triable issue of fact is created when the evidence reasonably permits the trier of fact, under the applicable standard of proof, to find the purportedly contested fact in favor of the party opposing the motion. We take the facts from the record that was before the trial court when it ruled on the motion for summary judgment, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained. We liberally construe the evidence in support of the plaintiff opposing summary judgment and resolve doubts concerning the evidence in his favor. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082]; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)

A defendant who moves for summary judgment bears the burden of showing the plaintiff cannot establish the elements of his cause of action or that there is a complete defense to the cause of action. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77]; Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has met that burden, it shifts to the plaintiff to show a triable issue of material fact exists as to the cause of action or defense. (§ 437c, subd. (p)(2).) The plaintiff may not rely on the allegations in his pleadings but must set forth the specific facts showing the triable issue of material fact. (§ 437c, subd. (p)(2).)

### II. *Evidentiary Objections*

To ensure we consider all of the admissible evidence, we first address Hodjat's complaint that the trial court erred when it refused to rule upon his evidentiary objections because they failed to comply with California Rules of

Court, rule 3.1354. Rule 3.1354(b) dictates the format in which evidentiary objections must be submitted: "All written objections to evidence must be served and filed separately from the other papers in support of or in opposition to the motion. Objections on specific evidence may be referenced by the objection number in the right column of a separate statement in opposition or reply to a motion, but the objections must not be restated or reargued in the separate statement."

Below, the trial court ruled on the objections made in a document entitled "Objections of Plaintiffs to Declaration of Hervey 'Skip' Davidson," but refused to rule on any other of Hodjat's evidentiary objections because they were not also filed separately as required under California Rules of Court, rule 3.1354. Instead, the objections were included in Hodjat's separate statement, in violation of rule 3.1354's requirement that the objections not be stated or argued in the separate statement. Hodjat contends that the trial court should properly have overlooked the deficiency or permitted him the opportunity to reformat his opposing papers. We find the trial court did not abuse its discretion. (See *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 74 [50 Cal.Rptr.3d 149] (*Collins*); *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1211 [35 Cal.Rptr.3d 411] (*Parkview Villas*).)

Hodjat cites to *Collins* and *Parkview Villas* to support his contention. Both cases address whether a trial court abuses its discretion when it grants summary judgment on the ground the opposing party filed a deficiently formatted separate statement of material fact. While neither case precisely addresses the issue at hand—whether a trial court is obligated to give a party a second chance at properly formatting its evidentiary objections under California Rules of Court, rule 3.1354—the analysis in *Collins* provides some insight as to why Hodjat did not deserve another opportunity to reformat his objections.

The *Collins* court explained: " 'The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. [Citation.]' [Citation.] To that end, the rules dictating the content and format for separate statements submitted by moving and responding parties 'permit trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are disputed.' [Citations.] That goal is defeated where, as here, the trial court is forced to wade through stacks of documents, the bulk of which fail to comply with the substantive requirements of [Code of Civil Procedure] section 437c, subdivision (b)(3), or the

formatting requirements of [California Rules of Court,] rule 342,[2] in an effort to cull through the arguments and determine what evidence is admitted and what remains at issue. The realization of this goal is so important that the Legislature has determined '[f]ailure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion.' (§ 437c, subd. (b)(3).)" (*Collins, supra*, 144 Cal.App.4th at pp. 72–73.)

The same reasoning can be applied in this case. The rules requiring evidentiary objections to be filed separately and not repeated in the separate statement are to allow the trial court to consider each piece of evidence and all of the objections applicable to that piece of evidence separately. Thus, the trial court correctly ruled on the separate objections to Davidson's declaration. Just as it was explained in *Collins*, interposing objections into the separate statement defeats the goal of allowing the trial court to quickly and efficiently determine what particular piece of evidence is admitted and what is not. This is because the separate statement is focused on individual facts, which may be supported by the same or different pieces of evidence. A trial court would be forced to wade through all of the facts in order to rule on a particular piece of evidence.

In this case, Hodjat was well aware of the formatting requirements contained in California Rules of Court, rule 3.1354 since he separately objected to Davidson's declaration. There is no authority to support Hodjat's argument that the trial court was required to give him a second chance at filing properly formatted papers under these circumstances. The trial court did not abuse its discretion.

III. *The Hodjats Have Failed to Establish a Triable Issue of Material Fact*

Here, State Farm met its initial burden of showing that the denial of the Hodjats' claim was justified under the terms of the policy. On appeal, the Hodjats do not present a genuine argument that State Farm has not met its initial burden. Nor could they. Under the express terms of the insurance policy on the BMW, there is no coverage if the policyholder gives false statements regarding the claim or fails to cooperate in the investigation. State Farm presented evidence demonstrating numerous instances of material misrepresentations and several inconsistencies by the Hodjats. Hodjat changed the price of the BMW three times and misrepresented the extent of the damage to the car, where he had the car fixed, the amount of money he paid to have it fixed, and the last time he saw the BMW before it was stolen. The

---

[2] California Rules of Court, former rule 342 (renumbered to rule 3.350) provided the formatting requirements for separate statements of fact.

Hodjats also failed to cooperate with State Farm in the investigation when they failed to provide requested documentary evidence in support of their claims. State Farm also presented evidence that the denial of the claim was made in good faith—the evidence demonstrating that no policy benefits were owing under the contract also shows they did not act in bad faith in denying the claim. The same evidence also clearly demonstrates that State Farm's denial of the claim was based on a genuine dispute about the liability. (See, e.g., *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335 [108 Cal.Rptr.2d 776].)

Instead, the Hodjats contend that summary judgment was not warranted because triable issues of fact exist. They accuse State Farm of manipulating facts, hiring dishonest investigators, and relying on unreasonable legal advice to deny their claim. However, the Hodjats fail to provide any facts, much less citations to evidence in the record, to support these sweeping accusations of wrongdoing. As a result, they have failed to satisfy their burden of raising a triable issue of material fact as to their claims or as to State Farm's defenses.

██ It is an appellant's duty to direct the court to evidence that supports his arguments. (*Collins, supra*, 144 Cal.App.4th at p. 75.) " '[T]he opposing party is required by the statute, in connection with each fact which the opposing party disputes, to follow the statement of that fact by reference to the evidence which creates the dispute.' " (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 336 [282 Cal.Rptr. 368], fn. omitted, quoting *Blackman v. Burrows* (1987) 193 Cal.App.3d 889, 896 [238 Cal.Rptr. 642].) Moreover, an appellant is required to not only cite to valid legal authority, but also explain how it applies in his case. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834] (*Kim*).) It is not the court's duty to attempt to resurrect an appellant's case or comb through the record for evidentiary items to create a disputed issue of material fact. (*Eddins v. Redstone* (2005) 134 Cal.App.4th 290, 318–319 [35 Cal.Rptr.3d 863].)

The Hodjats first contend that State Farm conducted an unfair and biased investigation. This included "manipulat[ing]" facts "such as claiming that Appellant Allen Hodjat's business associations equated fraudulent activity" and "arbitrarily and capriciously interpret[ing] the facts in its quest for purported bases upon which to deny the claim." According to the Hodjats, State Farm also wrongfully charged them with a crime they did not commit and sought information not reasonably required for or material to the claim. Beyond the vague and unsupported statement that State Farm claimed Hodjat's business associations were fraudulent, the Hodjats fail to explain, much less provide evidence of, how State Farm's investigation was unfair or biased. They fail to identify which facts were manipulated or misinterpreted.

They also fail to identify which crimes State Farm accused them of committing. Nor do they state what information sought by State Farm was irrelevant to the claim such that State Farm's demand of it was "burdensome, repeated, and badgering" in violation of California Code of Regulations, title 10, section 2695.7, subdivision (d). Rather than direct us to the evidence in the record that supports these claims, the Hodjats merely argue these points in a conclusory manner.

The Hodjats next quote extensively from two cases, *Guebara v. Allstate Ins. Co.* (9th Cir. 2001) 237 F.3d 987 and *Hangarter v. Provident Life and Accident Ins. Co.* (9th Cir. 2004) 373 F.3d 998, for the proposition that summary judgment cannot be based on the genuine dispute doctrine when the insurer dishonestly selected its experts, the experts were unreasonable or the insurer failed to conduct a thorough investigation. While these general propositions of law may be true, the Hodjats provide no explanation as to how they are true in this case. They do not name the expert who was purportedly dishonest or unreasonable or failed to thoroughly investigate their claim. They also do not describe what it was that he did not do or did wrong. In short, the Hodjats fail to apply the law to the facts of this case. (*Kim, supra*, 17 Cal.App.4th at p. 979.)

The Hodjats also contend there is no advice of counsel defense where the advice is not reasonable. It is telling that this argument is two sentences long. Accordingly, we dismiss it in one. The Hodjats further contend State Farm failed to show substantial prejudice in order to deny their claim based on lack of cooperation. According to the Hodjats, State Farm had sufficient information demonstrating the validity of the claim by at least October 2, 2009. We fail to see, and the Hodjats fail to advise us, what information demonstrated the validity of their claim. Rather, the Hodjats' own statements illustrate how fraudulent their claim was. While the Hodjats admit their statements regarding the theft of the BMW were inconsistent, they assert the inconsistencies were "relatively insignificant." Not so.

Hodjat first told State Farm that he purchased the BMW for $65,000 when he reported the loss. In the affidavit of loss, however, the Hodjats stated they purchased the BMW for $28,000 from Manheim Riverside. In a recorded statement less than a month later, Hodjat claimed they paid between $26,000 and $27,000. Meanwhile, the title documents for the car showed a sale price of $25,000 to $25,199. Hodjat's description of the condition of the car when he bought it also changed dramatically during the course of the investigation. In the recorded statement, he told State Farm that the car was drivable at the time he purchased it, but later he stated that it was not drivable and had to be towed to his business. Hodjat also made inconsistent statements regarding how much it cost to repair the BMW, providing estimates ranging from

$1,800 to $5,040 to $8,000 during the course of the investigation. Hodjat's description of when he last saw the BMW and when he discovered it missing also changed each time he spoke with State Farm and the police. Every detail of the Hodjats' claim—from the condition of the car to the cost of the repairs to the discovery of the theft—was riddled with inconsistencies.

The insurance policy on the BMW is clear—there is no coverage if the policyholder gives false statements regarding the claim. No reasonable jury could find in favor of the Hodjats on State Farm's defense of material misrepresentations. The Hodjats have failed to raise a triable issue of material fact about whether the denial of their claim was justified under the terms of the policy. They have also failed to raise a triable issue about whether State Farm's investigation and denial of the claim was made in bad faith. Accordingly, summary judgment was warranted on both the claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

## DISPOSITION

The judgment is affirmed. State Farm to recover its costs on appeal.

Rubin, J., and Grimes, J., concurred.