Filed 11/26/14  Brown v. City and County of San Francisco CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| JOHNNIE L. BROWN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant and Respondent. | A140644<br><br>(City & County of San Francisco<br>Super. Ct. No. 500108) |

Plaintiff Johnnie L. Brown was allegedly injured when a bus door closed on her. She sued the City and County of San Francisco (city) on the ground the city had constructive knowledge of the existence of a dangerous condition of public property.  On appeal from a summary judgment entered in favor of the city, her sole claim is that certain city witnesses who supplied declarations in support of the city's summary judgment motion failed to properly authenticate business records on which they relied. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On October 14, 2009, Brown was riding MUNI coach number 6418 on the 38 Geary line in San Francisco.  Brown and her companion, Eddie Pipkin, began exiting the rearmost door of the bus.  Pipkin stepped off the bus completely and turned back to look at Brown, who had placed both feet on the second of three steps in the stairwell of

1

the rear doorway. The door closed on Brown's hip while she was standing on the second step.

Brown sued the city to recover for injuries she allegedly suffered when the bus door closed on her. In the operative fifth amended complaint (hereafter, complaint), she alleges a single cause of action for premises liability based on a dangerous condition of public property. She alleges the city had constructive knowledge of the existence of a dangerous condition created by employees of the city.

Brown sought discovery from the city regarding MUNI coach number 6418. The discovery consisted of special interrogatories, document requests, and requests for admission. According to the city, Brown did not conduct any depositions or pursue further discovery. In response to discovery propounded by the city, Brown identified MUNI coach number 6418 as the bus on which she was injured.

The city moved for summary judgment. It claimed the doors functioned properly and there was no evidence of prior accidents involving the doors. It further argued Brown could not establish the existence of a dangerous condition or that the city had actual or constructive notice of any alleged dangerous condition. Finally, the city argued that it enjoyed design immunity.

In support of its motion, the city relied on excerpts from Brown's deposition and her responses to special interrogatories. The city also relied upon the declarations of MUNI employees Elson Hao and Neal Popp.

Popp was the deputy director of maintenance for MUNI and had previously been MUNI's senior operations manager. He stated that MUNI's 38 Geary line is populated with Neoplan AN460 buses, which are "articulated" 60-foot-long buses with two right-side rear doors that close automatically and cannot be closed by a bus operator. The rear doors may be opened by a passenger or by the bus driver. According to Popp, a passenger can open the door after the bus has come to a stop and the operator pushes a button unlocking the rear door by either (1) pressing a touch bar on the door or (2) standing in the exit stairwell on the bottom treadle step. Regardless of whether the door was opened by the passenger or the operator, the door closes automatically after a short,

2

preset time after a passenger exits. Popp stated that the door is designed to close automatically between two and four seconds after there is no longer 40 pounds of pressure on the bottom treadle step of the exit stairwell. The operator does not manually close the door but does press a button locking the rear door after it closes automatically. According to Popp, the operator does not have the ability to close the door manually because the operator does not always have an unobstructed view of the rear door exit stairwell.

Popp claimed to have reviewed the complete work order history for MUNI coach number 6418 covering repairs from October 2005 to October 2009. In the year leading up to the October 2009 accident, there were no work orders involving the rear doors. The last work order concerning the functioning of the doors dated back to May 2008. At the time, the doors were tested and no defect was found. Popp also reviewed the routine inspection history of MUNI coach number 6418. Coaches are inspected every 1,000 miles. Two such inspections took place in October 2009 and included testing of, among other features, systems controlling the functioning of the doors. According to Popp, neither of the October 2009 inspections turned up any defect in the rear doors of MUNI coach number 6418. Finally, Popp claimed to have conducted an electronic search of MUNI's central control records regarding incidents and injuries involving the rear doors of coach number 6418. In the period from January 2001 until the date of the Brown's accident, there were no accidents or injuries associated with the rear doors of coach number 6418.

Hao stated he was a licensed engineer employed by MUNI fleet engineering. He was the custodian of records related to the design and purchase of coach number 6418. He declared that coach number 6418 was manufactured by Neoplan corporation in accordance with federal motor vehicle safety standards. Attached to Hao's declaration was a letter from Neoplan verifying that its coaches satisfied federal motor vehicle safety standards as well as a letter from MUNI fleet engineering authorizing the purchase of the Neoplan coaches. According to Hao, MUNI fleet engineering approved the design of coaches based upon their professional judgment and knowledge of urban mass transit.

3

The design approval extended to coach number 6418 and its rear passenger doors and design.

In opposition to the summary judgment motion, Brown submitted two declarations—one by her and the other by Eddie Pipkin, who witnessed the bus doors closing on Brown. Pipkin stated that, based upon his prior experience on MUNI buses, he believed the bus driver may have manually caused the rear door to close on Brown. In her declaration, Brown stated she was not sure that the incident in which she was injured took place on coach number 6418, and she questioned whether the bus at issue was articulated or non-articulated. She further stated that it was now her belief, in contrast to her deposition testimony, that there were only two steps in the rear doorway and that she was standing on the bottom treadle step when the door closed on her. She claimed there was a dangerous condition of public property because either (1) the bus driver manually closed the rear door of a non-articulated coach, or (2) if she was on an articulated coach, it was dangerous to allow the doors to close automatically when a passenger is standing on the second of three steps in the stairwell.

The trial court granted summary judgment in favor of the city. The court reasoned that Brown failed to identify any admissible evidence to support her theory that the rear doors on the bus were dangerous. The court also concluded there was no evidence the city had actual or constructive knowledge of any dangerous condition of public property. Finally, the court concluded the city enjoys design immunity and that Brown had failed to set forth any evidence to contradict the city's factual showing supporting the defense. Following entry of judgment, Brown filed a timely appeal.

## DISCUSSION

1.   *Standard of Review*

We review a grant of summary judgment do novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) However, evidentiary rulings are reviewed under the deferential abuse of discretion standard. (*Miranda v. Bomel Construction Co.* (2010) 187 Cal.App.4th 1326, 1335.) Likewise, when evidentiary objections are presented in an improper format and the court fails to rule on the objections, we apply an abuse of

4

discretion standard in assessing the court's actions.  (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7–9 (*Hodjat*).)

**2.** *Evidentiary Objections*

Brown's sole claim on appeal is that the court erred in granting summary judgment based on declarations of "expert witnesses" who relied on business records for which no proper evidentiary foundation was laid.  In effect, Brown contends the court erred in disregarding her objections to the evidence proffered by the city.  As we explain, the court did not abuse its discretion in disregarding Brown's defective evidentiary objections.

Parties are required to file a separate document setting forth objections to evidence.  (Cal. Rules of Court, rule 3.1354(b); see *Public Utilities Com. v. Superior Court* (2010) 181 Cal.App.4th 364, 376, fn. 9.)  The rule is not draconian.  "The rules requiring evidentiary objections to be filed separately and not repeated in the separate statement are to allow the trial court to consider each piece of evidence and all of the objections applicable to that piece of evidence separately."  (*Hodjat, supra,* 211 Cal.App.4th at p. 9.)  Further, parties are afforded an additional chance to raise any evidentiary objections during the hearing.  (Cal. Rules of Court, rule 3.1352.)

Here, Brown failed to file a separate document setting forth her evidentiary objections in compliance with the California Rules of Court.  She also failed to raise any evidentiary objections during the hearing on the summary judgment motion.  Instead, her evidentiary objections were included in the text of her memorandum of points and authorities opposing the city's summary judgment motion.  The situation is similar to one faced by the court in *Public Utilities Com. v. Superior Court, supra,* 181 Cal.App.4th 364.  There, a party objecting to evidence in a summary judgment proceeding did not comply with the California Rules of Court but instead "simply raised the claim in the middle of points and authorities it offered in support of its motion" and did not raise the objection at the hearing on the motion.  (*Id.* at p. 376, fn. 9.)  The court concluded the objection was not preserved for review on appeal.  (*Ibid.*)  Similarly, in *Hodjat, supra,* 211 Cal.App.4th at page 8, the appellate court declined to consider objections included in

the text of the separate statement that were not presented in a separate document in accordance with the California Rules of Court. The appellate court concluded the trial court did not abuse its discretion in declining to rule on the objections and had no obligation to afford the party a second chance at filing the objections in a proper format. (*Id.* at p. 9.)

We conclude the trial court did not err in declining to rule on Brown's defective evidentiary objections. The court had no obligation to wade through Brown's brief and the evidence presented by the city to ascertain which particular pieces of evidence were the subject of an objection by Brown. Accordingly, Brown forfeited her objections. (*Public Utilities Com. v. Superior Court, supra,* 181 Cal.App.4th at p. 376, fn. 9.)

Even if Brown did not waive her procedurally improper objections, we would still find no merit in her contentions. Her primary claim is that city witnesses Popp and Hao relied on business records that were not properly authenticated. However, the authority she cites arises in the context of non-party expert witnesses who rely on business records as the basis for an expert opinion. (See *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 741–742.) That authority is inapposite.

In this case, Popp and Hao were not non-party witnesses retained to offer an expert opinion. Instead, they offered declarations based upon their experience and duties as long-time MUNI employees. Popp has decades of experience working on MUNI's fleet of coaches. He explained three ways in which MUNI might make a record of a dangerous rear door, and he further explained that MUNI had no such record concerning MUNI coach number 6418. Hao, in his capacity as a licensed engineer employed by MUNI fleet engineering, declared that coach number 6418 was manufactured according to federal motor vehicle safety standards. Popp and Hao did not offer expert opinions but instead stated facts within their knowledge as MUNI employees. Brown has not adequately explained why we should disregard factual statements of these party witnesses as unreliable. Further, to the extent Brown challenges the foundation for Popp's knowledge of MUNI buses and routes, her argument is frivolous. As a MUNI employee who worked in maintenance for 30 years, including as deputy director of maintenance

6

and senior operations manager, Popp established a sufficient foundation for his statements concerning the operation of MUNI buses.

Finally, even without considering the Popp and Hao declarations, there was a sufficient basis for the court to grant summary judgment. In order to shift the burden of production, a party moving for summary judgment need only make a "prima facie showing" that there is no triable issue of material fact. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) A moving defendant can satisfy its initial burden by establishing that the plaintiff's discovery responses are devoid of any facts supporting the plaintiff's claims. (*Chavez v. Glock, Inc.* (2012) 207 Cal.App.4th 1283, 1302.) In this case, the city met its burden by establishing that Brown's discovery responses were devoid of facts supporting her claim that the city was constructively aware of a dangerous condition of public property. In effect, she premised her entire case on the fact the bus doors closed on her. But simply because the doors closed on her in this one instance does not establish the existence of a dangerous condition. (See Gov. Code, § 830, subd. (a) [to be considered dangerous, condition of property must create a substantial risk of injury when used with due care].) Nor does this one episode support a conclusion that the city knew or should have known of the existence of any dangerous condition.

In response to the city's prima facie showing of the absence of any triable issue of material fact, the burden shifted to Brown to make her own prima facie showing of the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) She failed to satisfy her burden. Instead, she offered declarations that contained little more than conjecture about the identity of the bus on which she was injured and speculation about whether the bus driver may have manually closed the door. "[E]vidence that gives rise to no more than mere speculation . . . is insufficient to establish a triable issue of material fact." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th

7

151, 163.) Under these circumstances, the court did not err in granting summary judgment. [1]

**DISPOSITION**

The judgment is affirmed. Respondent is entitled to recover its costs on appeal.

            _____

             McGuiness, P.J.

We concur:

_____

Pollak, J.

_____

Siggins, J.

---

[1] Although Brown chose to proceed by appendix pursuant to rule 8.124 of the California Rules of Court, she did not present this court with an appendix. Instead, she asked this court to take judicial notice of various pleadings filed in the trial court. Because the respondent's appendix provided to this court by the city contains a complete record of the documents necessary to consider Brown's appeal, it is unnecessary to consider the matters contained in Brown's judicial notice request, which appear to duplicate the contents of the respondent's appendix. Accordingly, the request for judicial notice is denied.

8