Filed 12/23/15  Miller v. Canary Asset Management CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| KURT MILLER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CANARY ASSET MANAGEMENT, INC.,<br><br>    Defendant and Respondent. | B258413<br><br>(Los Angeles County<br>Super. Ct. No. BC508679) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Malcolm Mackey, Judge.  Affirmed.

Law Offices of Andrew D. Weiss and Andrew D. Weiss for Plaintiff and Appellant.

Halavais & Associates, Coby Halavais and Thomas Kemerer, for Defendant and Respondent.

_____

This case concerns a property in Gardena and multiple promissory notes secured by deeds of trust recorded against the property. Kurt Miller, the holder of the junior deed of trust, filed suit against Canary Asset Management, Inc., doing business as C&H Trust Deed Service (C&H), the trustee, and Maria Macias, the holder of the senior deed of trust, after foreclosure proceedings were initiated. Following Macias's deposition, C&H canceled the scheduled foreclosure sale and rescinded the Notice of Default. C&H subsequently filed a motion for summary judgment. The trial court granted the motion. Miller appeals from the judgment of dismissal. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Macias sold a property to Jose and Rosalba Rodriguez. An auto repair shop was located on the property. The Rodriguezes executed a note and deed of trust, agreeing to pay Macias $500,000. The note was to mature in 2018 (Rodriguez Note). In 2004, the Rodriguezes sold the property to Maria Oliva. Oliva financed the purchase with a loan from the Rodriguezes of $700,000, secured by a deed of trust on the property (Oliva Note). Under the terms of the Oliva Note, if the Rodriguezes defaulted on any of the payments due under the terms of the Rodriguez Note, Oliva had the option to make the payments instead; the amounts paid were to be credited to the Oliva Note. Miller later purchased the Oliva Note and deed of trust from the Rodriguezes. Miller and Oliva made payments under the Rodriguez Note to Macias or her attorney.

In February 2013, Macias retained C&H in connection with the Rodriguez Note and deed of trust. Macias signed a document authorizing C&H to initiate foreclosure proceedings. C&H issued and recorded a notice of default and election to sell under deed of trust. Macias executed a substitution of trustee naming C&H as the trustee; C&H recorded the substitution.

In May 2013, shortly before C&H issued a notice of trustee's sale, Miller filed suit against Macias and C&H, alleging claims for negligence, fraud, breach of contract and the implied covenant of good faith and fair dealing, and seeking to void or cancel the notice of default and election to sell under the deed of trust. Miller alleged that when he was considering purchasing the Oliva Note in 2007, he met with Macias and learned from

2

her that the payments due under the Rodriguez Note were current. Miller made payments on the Rodriguez Note to Macias's attorney, then, upon her request, directly to Macias. Miller alleged that he, Rodriguez, or Oliva continued making payments under the Rodriguez Note. The complaint further alleged that Macias agreed to reduce the principal balance of the Rodriguez Note for certain amounts, such as the price of a truck Macias bought from Oliva and her husband, Jose Portillo, and the cost of car repairs Oliva and Portillo performed for Macias.

According to the complaint, Macias told Portillo she felt Rodriguez had not paid her the fair market value of the property. Macias told Portillo she had consulted an attorney to determine how to regain ownership of the property so that she might realize more profit from a subsequent sale. Macias then hired C&H to foreclose on the property, without contacting Rodriguez or Miller, and without informing them of any problem with the payments under the Rodriguez Note. The complaint asserted Rodriguez and Miller had not defaulted and the notice of default was wrongly recorded.

The complaint alleged no one at C&H notified Rodriguez or Miller of the foreclosure, and neither received a notice of default and election to sell. Portillo informed Miller of the notice of default, which had been sent to the auto shop on the property. When Portillo requested an accounting of the balance due to Macias, the response C&H provided was inaccurate and did not reflect payments made or various reductions to the principal balance. According to the complaint, Miller and Macias met to discuss the inaccuracies and Miller's request that Macias stop the foreclosure proceedings. Macias agreed that some portions of the accounting she had provided to C&H were wrong, but she disagreed with Miller as to the correct balance due under the Rodriguez Note. Macias agreed to prepare a new accounting summary, but then failed to do so. Portillo's attorney contacted C&H to ask about the new accounting. C&H's president said Macias had not contacted him or provided any new information, and he knew nothing about a new accounting Macias had told Miller she would prepare, or the inaccuracies Macias admitted to Miller. Miller attempted to contact Macias, but she did not take or return his calls.

3

It is undisputed that during Macias's deposition, "it became apparent that [Macias] had failed to keep accurate payment records and that the information she had provided to [C&H] was incomplete and inaccurate." C&H cancelled the scheduled foreclosure sale, recorded a Notice of Rescission of the Notice of Default, and resigned as trustee.

C&H then filed a motion seeking summary judgment. C&H argued it had statutory immunity pursuant to Civil Code section 2924,[1] and could not be held liable as alleged in the complaint because it did nothing more than initiate and prosecute a non-judicial foreclosure at the instruction and request of Macias. The motion pointed out the complaint included no allegations relating to C&H's conduct in the negligence or fraud causes of action. The remaining causes of action seeking to enjoin the foreclosure proceedings were moot as C&H had already rescinded the Notice of Default. C&H also contended it had no contractual relationship with Miller, thus the contractual claims against it could not stand.

Miller opposed the motion, asserting there were triable issues of fact regarding whether C&H was immune from liability under section 2924. Miller pointed to Macias's limited fluency in English and portions of her deposition in which she claimed not to have seen the first three pages of the foreclosure instructions and expressed a lack of knowledge about foreclosure sales. Based on this evidence, Miller asserted there was a triable issue as to whether C&H had relied in good faith on the information Macias provided. Miller also relied on Macias's deposition testimony that she did not want to sell the property and had retained C&H to help "clarify" the payments due under the Rodriguez Note, to argue there was a triable issue of fact as to whether C&H acted outside of the scope of the authority Macias granted it. Miller further asserted C&H was negligent in including an unsecured loan in the payoff demand and notice of default. Miller contended features of the unsecured loan agreement should have raised suspicions, such as the fact that the note (in Spanish) was signed by Oliva and Portillo, not

---

[1] All further statutory references are to the Civil Code unless otherwise noted.

4

Rodriguez. Miller argued the inclusion of an unsecured debt in the amounts identified as in default removed C&H's actions from the protection of section 2924.

In a declaration supporting the opposition to the motion for summary judgment, Miller asserted he never received a notice of default, although he learned of its issuance in late April 2013, when he was visiting Portillo's auto repair shop at the property.[2]

In its reply, C&H argued Miller had not established C&H owed him any duty of care, and also that he failed to present any evidence of causation or damages to support a negligence claim.

The trial court granted the motion for summary judgment. A judgment of dismissal was entered. Miller's appeal timely followed.

## DISCUSSION

On appeal, Miller contends the trial court should have denied C&H's motion for summary judgment because: 1) he raised triable issues of fact regarding whether C&H relied in good faith on the information Macias provided to initiate foreclosure proceedings; 2) C&H was not entitled to statutory immunity because the Notice of Default and Notice of Sale were based in part on an unsecured debt and because Macias had not authorized foreclosure proceedings; 3) C&H was not entitled to statutory immunity for acts it performed before it became a trustee; 4) there were triable issues of fact on the negligence claim arising from evidence that C&H acted beyond the scope of its authority, C&H's alleged failure to establish it mailed a copy of the notice of default and notice of sale to Miller, the faulty accounting, the lack of evidence that Miller was served with a copy of the substitution of trustee, and the inclusion of unsecured debt in the payoff demand amount; and 5) C&H failed to establish it had no duty to Miller as a junior lienholder. We affirm the judgment.

---

[2] The complaint alleged Miller learned of the notice of default in mid-March 2013, when Portillo contacted him after receiving a copy of the notice at the auto shop.

## I. The Trial Court Properly Granted the Motion for Summary Judgment

### A. Standard of Review

" ' " 'A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); [citation].) The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish," ' the elements of his or her cause of action. [Citation.]" [Citation.]' " (*Ennabe v. Manosa* (2014) 58 Cal.4th 697, 705.) "Upon such a showing, 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action. . . .' [Citation.]" (*Nalwa v. Cedar Fair, L.P.* (2012) 55 Cal.4th 1148, 1154.) " 'We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.' [Citation.]" (*Ennabe*, *supra*, 58 Cal.4th at p. 705.)

### B. Miller Could Not Defeat Summary Judgment By Relying on Unpleaded Negligence Theories

In his opposition to the motion for summary judgment, Miller acknowledged most of his causes of action against C&H were moot, and he explicitly limited his opposition to the negligence cause of action. He then asserted there were triable issues of fact regarding C&H's statutory immunity because it acted outside of the scope of authority designated by Macias; the notice of default and notice of sale were based in part on an unsecured debt; and C&H failed to comply with certain notice provisions. However, none of these theories were pleaded in the complaint in connection with the negligence claim. The complaint based the negligence cause of action solely on Macias's alleged conduct—it did not mention C&H at all.

The complaint contained a standard allegation that the two defendants were acting as the agents and employees of each other and "defendants were acting within the course and scope of their agency and employment." But the negligence cause of action was limited to Macias's duty to exercise reasonable care and skill in maintaining loan records.

The complaint alleged Macias breached that duty in servicing the relevant loans by "failing to properly and accurately credit payments made by or on behalf of Miller toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so." The cause of action for negligence identified no allegedly negligent actions by C&H.

Similarly, the complaint's recitation of facts did not advance a theory that C&H's actions in issuing and recording the notice of default went beyond what Macias authorized. On the contrary, the complaint explicitly alleged Macias hired C&H to foreclose on the property. It also alleged that after the notice of default was issued, Portillo's attorney contacted C&H and received a schedule of accounting that was incorrect; Miller then met with Macias to seek a correct accounting but she did not agree with him about the balance due under the Rodriguez Note. According to the complaint, C&H later informed Portillo's attorney it had not received any corrected accounting from Macias and had not been informed of any inaccuracies. When Miller called Macias on the issue, she did not return his calls.

Nothing in these allegations identified a theory that Macias did not wish to foreclose, or that C&H did not in good faith rely on information received from Macias—information which turned out to be wrong. The complaint did not mention the inclusion of an unsecured debt in the default amount. C&H's alleged failure to serve Miller with copies of the notice of default, and its alleged lack of authority because of the absence of a signed substitution of trustee, formed the basis of Miller's claims seeking to invalidate the impending foreclosure sale. Yet he abandoned these claims after C&H rescinded the notice of default and canceled the scheduled sale. These allegations in the complaint were not connected to the negligence cause of action, which described only Macias's conduct. Further, while the complaint identified the legal duty Macias purportedly owed Miller, it did not similarly identify a legal duty C&H owed Miller.

"[T]he pleadings set the boundaries of the issues to be resolved at summary judgment. [Citations.] A 'plaintiff cannot bring up new, unpleaded issues in his or her opposing papers. [Citation.]' [Citations.] A summary judgment or summary

7

adjudication motion that is otherwise sufficient 'cannot be successfully resisted by counterdeclarations which create immaterial factual conflicts outside the scope of the pleadings; counterdeclarations are no substitute for amended pleadings.' [Citation.] Thus, a plaintiff wishing 'to rely upon unpleaded theories to defeat summary judgment' must move to amend the complaint before the hearing." (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648.)

Miller's complaint did not allege facts seeking to hold C&H liable for negligence. Further, the complaint did not allege facts or legal theories asserting C&H acted outside of the authority Macias granted it. Indeed, the complaint alleged that C&H was an agent of Macias and was at all times acting within the course and scope of that agency. This allegation cut against the arguments in opposition to the motion for summary judgment— namely that C&H had no authority from Macias to issue and record a notice of default and notice of trustee's sale. (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, 14 (*Ram*) [rejecting argument that defendant was unauthorized to issue notice of default because substitution of trustee had not been recorded; complaint alleged defendant was agent of beneficiary, and plaintiff could not "have it both ways"].)

Miller could not defeat summary judgment by alleging a new theory of liability as to C&H. He did not seek to amend the complaint before the hearing on the motion. Thus, the trial court could properly grant summary judgment to C&H because Miller failed to raise any triable issue of material fact, as determined by the scope of the pleadings.

## C. Miller Failed to Raise a Triable Issue of Material Fact as to the Applicability of Section 2924, subdivisions (b) and (d).

Further, even were Miller's unpleaded theories considered, the trial court could still properly grant the motion. C&H established Miller could not prevail on a negligence claim because its conduct was protected by section 2924, subdivisions (b) and (d). Miller failed to show a triable issue of material fact existed on that dispositive issue.

8

### i. The trustee in nonjudicial foreclosures

The court in *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316 (*Kachlon*), summarized the role of the trustee in nonjudicial foreclosures:

"Under a deed of trust containing a power of sale . . . the borrower, or 'trustor,' conveys nominal title to property to an intermediary, the 'trustee,' who holds that title as security for repayment of the loan to the lender, or 'beneficiary.' [Citations.] The trustee's duties are twofold: (1) to 'reconvey' the deed of trust to the trustor upon satisfaction of the debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to initiate nonjudicial foreclosure on the property upon the trustor's default, resulting in a sale of the property. [Citations.] The beneficiary may make a substitution of trustee . . . to conduct the foreclosure and sale.

"When the trustor defaults on the debt secured by the deed of trust, the beneficiary may declare a default and make a demand on the trustee to commence foreclosure. [Citation.] The Civil Code contains a comprehensive statutory scheme regulating nonjudicial foreclosure. Generally speaking, the statutory, nonjudicial foreclosure procedure begins with the recording of a notice of default by the trustee. (§ 2924, subd. (a)(1).) After the expiration of not less than three months, the trustee must publish, post, and mail a notice of sale at least 20 days before the sale, and must also record the notice of sale at least 14 days before the sale (§§ 2924, subd. (a)(1), (2) & (3), 2924f, subd. (b)(1); [citations].) [¶] The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary. [Citation.] The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. *No other common law duties exist*. [Citations.]" (*Kachlon,* at pp. 334-335, fn. omitted, italics added.)

### ii. Limited Liability of the Trustee in Non-Judicial Foreclosure Proceedings

Two provisions limit the liability of trustees in nonjudicial foreclosure proceedings. Under section 2924, subdivision (b): "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the

9

amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4 [regarding fair debt collection practices]."

Further, under section 2924, subdivision (d): "All of the following shall constitute privileged communications pursuant to Section 47: (1) The mailing, publication, and delivery of notices as required by this section. (2) Performance of the procedures set forth in this article. (3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure [relating to property sold subject to the right of redemption]."

These provisions are consistent with the nonjudicial foreclosure statutes' "carefully crafted balancing of the interests of beneficiaries, trustors, and trustees . . . . Trustees, the middlemen, need to have clearly defined responsibilities to enable them to discharge their duties efficiently and to avoid embroiling the parties in time-consuming and costly litigation." (*I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 288.)

### iii. Miller failed to raise a triable issue of fact as to C&H's immunity under section 2924

Miller argues he raised a triable issue of fact regarding whether C&H was entitled to the protection afforded by section 2924, subdivision (b). Miller asserts there was evidence from which a trier of fact could conclude C&H's error was not in "good faith." We disagree.

In support of the motion for summary judgment, C&H asserted the following facts as undisputed: Macias signed and provided to C&H a completed "Foreclosure Instruction, Declaration of Default and Demand for Sale and Trustee-Beneficiary Agreement." The agreement contained representations from the beneficiary, such as that a default had occurred and information was accurately related to C&H on the form; the beneficiary elected to cause the trust property to be sold to satisfy the obligations secured by the deed of trust; and the beneficiary authorized C&H to sign and record a notice of

10

default and to conduct a trustee's sale. C&H produced the agreement, bearing Macias's signature. C&H also asserted it was undisputed that Macias gave C&H copies of the note and deed of trust for which she wished to initiate foreclosure proceedings. By declaration of C&H's president, it offered evidence that C&H requested additional records, Macias provided them, and based on that information, C&H issued and recorded a notice of default and election to sell under deed of trust. C&H's president also declared that in preparing the notice of trustee's sale, C&H "relied on the debt information provided to it by [Macias] and her affirmation that said information was true and correct as stated on the Request for Sale Instructions form."

Miller offered no evidence to dispute the declaration indicating C&H received information from Macias and relied on that information to issue and record the notice of default and election to sell. Miller's response to this evidence was to object based on a lack of foundation. However, his objections were not in proper form, as they were not in a separate document but were instead inserted in the response to C&H's separate statement of undisputed material facts. (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7-8 (*Hodjat*); Cal. Rules of Court, rule 3.1354(b).) Moreover, even to the extent these objections were considered despite their improper form, we must presume they were overruled. Under Code of Civil Procedure section 437c, subdivision (c), "the trial court must consider *all* evidence unless an objection to it has been raised *and sustained.* . . . It follows that the reviewing court must conclude the trial court considered any evidence to which it did not expressly sustain an objection." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 526-527, fn. omitted (*Reid*).)

Miller has not raised any issue on appeal regarding these purported objections. (*Reid, supra*, at p. 534 [presumptively overruled objections can still be raised on appeal, but burden is on the objector to renew the objections in the appellate court].) Thus we, like the trial court, consider C&H's evidence. In addition, some of Miller's arguments on appeal are based on allegations in the complaint. This is insufficient to raise a triable issue of material fact. "The plaintiff may not rely on the allegations in his pleadings but must set forth the specific facts showing the triable issue of material fact. (§ 437c, subd.

11

(p)(2).)" (*Hodjat, supra,* 211 Cal.App.4th at p. 7.) Miller did not set forth specific facts or evidence to dispute C&H's evidence that it relied on information and representations received from Macias to issue and record the notice of default.

Further, Miller did not effectively dispute C&H's evidence that in preparing the Notice of Trustee's Sale,[3] C&H "relied on the debt information provided to it by [Macias] and her affirmation that said information was true and correct as stated on the Request for Sale Instructions form." Miller produced no evidence suggesting C&H did not rely on Macias's representations and information, or that it was bad faith for C&H to rely on Macias's representations and information. Miller offered excerpts from Macias's deposition testimony in which she testified she did not understand that C&H was going to sell the property and she did not want to sell the property. Yet, there was no dispute that Macias signed the foreclosure instructions document and provided it to C&H. Macias testified she had seen the foreclosure instructions document before and the signatures were hers. C&H sent her the document, she signed it at her own home, and she read it "a little," but she did not understand it. She said she did not see the first pages of the document and did not remember whether those pages were attached to the signature page. But the page she signed included the term "nonjudicial foreclosure," it required her to certify that she had read and understood the agreement, and it counseled her to consult an attorney if there was anything about the effects of the nonjudicial foreclosure she did not understand.

In addition, when asked at her deposition if she ever authorized C&H to hold a foreclosure sale for her property, Macias answered "yes." When next asked what she understood a foreclosure sale to be, she answered, "I don't know." The next questions and answers were: "Q: A moment ago you told me you authorized them to hold a foreclosure sale. Why did you authorize them to hold a foreclosure sale? A: I don't

---

[3]     Again, we note the complaint does not mention the Notice of Trustee's Sale; it was recorded on May 13, 2013, three days after Miller filed his lawsuit. Without amending the complaint, Miller could not defeat the motion for summary judgment based on theories not alleged in the complaint, as explained above.

know.  Q:  Did someone suggest to you that you hire C&H Trust Deed Service to foreclose on the property?  A: No."  Liberally construing the evidence in Miller's favor, we could conclude Macias did not see the entire foreclosure instructions document, she did not intend to effect a sale of the property, and she did not understand what she was setting in motion by hiring C&H and authorizing foreclosure proceedings.  But this evidence does not suggest or establish that C&H did not in good faith rely on the document Macias signed or the information she provided to C&H.  The evidence did not indicate C&H had any reason to believe Macias did not want to foreclose, or that it could not rely on her representations regarding the underlying debt.

Miller was unable to dispute C&H's evidence that it relied on Macias's information to prepare, issue, and record the notice of default and election to sell.  The evidence that Macias did not see the first pages of the foreclosure instructions, or her claimed lack of knowledge about what a foreclosure sale was, does not create a triable issue of fact on whether C&H's reliance on her authorization and information was in good faith.

Similarly, Miller failed to raise a triable issue of fact on malice.  Under section 2924, subdivision (d), C&H's act of recording the notice of default was a privileged communication.  Unless C&H acted with malice it is immune from liability under the common interest privilege.  (*Kachlon, supra*, 168 Cal.App.4th at p. 343.)  As explained in *Kachlon*, " '[M]ere negligence in making "a sufficient inquiry into the facts on which the statement was based" does [not], of itself, relinquish the privilege.  "Mere inadvertence or forgetfulness, or careless blundering, is no evidence of malice." [Citation.]  [¶]  While "[the] concept of negligence is inherent in the issue of probable cause" [citation], the decisions long ago recognized that to constitute malice the negligence must be such as "evidenced a wanton and reckless disregard of the consequences and of the rights and of the feelings of others" [citation].' [Citations.]" (*Kachlon, supra,* at p. 344.)

C&H bore its burden to show Miller could not establish it acted with malice in recording the notice of default.  It offered evidence that it relied on the information Macias provided and that Macias authorized the company to initiate foreclosure

13

proceedings. Further, C&H offered evidence it had no prior relationship with Macias or Miller.

No evidence Miller proffered to oppose the motion for summary judgment suggested C&H acted "with ill will or with reckless disregard for the truth of the notice of default." The evidence upon which Miller relied indicated Macias approached C&H, a trust deed service company, for help with the Rodriguez loan; she signed a document authorizing C&H to proceed with a foreclosure; but she did not "see" the first three pages, and did not understand it. There was no evidence C&H was aware of or had any reason to know of Macias's claimed ignorance of the meaning of the document she signed at her own home and returned to the company. While she said she did not know what she understood a foreclosure sale to be; she hired C&H to clarify payments; and she did not intend to sell the property, she also testified she authorized C&H to hold a foreclosure sale. While this evidence could suggest a miscommunication between C&H and Macias, it does not suggest C&H acted with malice.

The trial court properly granted summary judgment on the ground that there were no triable issues of fact on the applicability of section 2924, subdivisions (b) and (d). Under those provisions and the undisputed facts which provided no evidence of bad faith or malice, C&H could not be held liable for following what reasonably appeared to be Macias's instructions to initiate foreclosure proceedings. Nor could C&H be held liable for the errors in Macias's information—including the inclusion of an unsecured debt in the loan payoff amount—which led to the inaccurately filed notice of default.[4]

---

[4]     We reject the argument that subdivisions (b) and (d) of section 2924 did not apply because the notice of default and notice of trustee's sale included an unsecured debt. This error appears to be well within the scope of section 2924, subdivision (b), which explicitly contemplates errors in the nature and amount of the default under the secured obligation, deed of trust, or mortgage. Further, there was no evidence this mistake was the result of ill will, or C&H's reckless disregard for the truth of the notice of default.

**D. No triable issue of material fact regarding C&H's pre-trustee acts**

Miller additionally asserts that even if section 2924, subdivision (b) applied to shield C&H from liability for acts taken as trustee, the provision would not apply to C&H's acts before becoming the trustee. The only act complained of is the signing and recording of the notice of default, based on the lack of a formal substitution of trustee until February 21, 2013. But, as explained in *Ram,* "several statutory provisions contemplate that an entity may be substituted as trustee even where substitution is not 'recorded' or 'effected' until after the notice of default is recorded, so long as notice is given to the trustor/borrowers." (*Ram, supra,* at p. 12.)

In light of these provisions, specifically section 2934a, subdivision (c),[5] which contemplates the validity of a substitution of trustee that is effected *after* a notice of default is recorded, it would be absurd to interpret section 2924, subdivision (b), as applying to protect the trustee from liability in its performance of statutorily-required acts only when a substitution of trustee is effected or recorded before the notice of default has been recorded. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1414 [we interpret the statute as a whole to make sense of the statutory scheme, and we interpret provisions so as to avoid absurd results].) Indeed, Miller cites no authority for this proposition. He has not raised a triable issue of material fact suggesting that section 2924, subdivision (b) did not shield C&H from liability related to the issuance and recording of the notice of default because the substitution of trustee was only executed later.

---

[5] Section 2934a concerns the procedures for a substitution of trustee. Under subdivision (c): "If the substitution is effected after a notice of default has been recorded but prior to the recording of the notice of sale, the beneficiary or beneficiaries or their authorized agents shall cause a copy of the substitution to be mailed, prior to, or concurrently with, the recording thereof, in the manner provided in Section 2924b, to the trustee then of record and to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b. An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision."

15

Further, even if C&H could not be deemed the trustee when it issued and record the notice of default because of the lack of a signed substitution of trustee, C&H's actions were valid because it was acting as Macias's agent. (*Ram*, *supra*, at pp. 13-14; § 2924, subd. (a)(1) [authorizing a notice of default to be recorded by the trustee, mortgagee, beneficiary, or any of their authorized agents].) While Miller contends that as a common agent, C&H could not benefit from the protections of section 2924, subdivision (b), even were that the case, section 2924, subdivision (d) would still apply. (*Kachlon, supra,* 168 Cal.App.4th at p. 344 [provision protects beneficiaries when they also act as trustees in the enforcement of the power of sale in the deed of trust].) And, as explained above, Miller has not raised a triable issue of fact as to malice.

## E. No Triable Issue of Material Fact as to Alleged Failure to Provide Required Notice to Miller

Finally, Miller has not raised a triable issue of material fact regarding his claim of negligence due to C&H's alleged failure to serve him with a copy of the substitution of trustee, the notice of default, and the notice of trustee's sale, as required by statute. Assuming, without deciding, that Miller effectively controverted C&H's evidence that notice was mailed as required by law, C&H established any negligence claim failed for lack of injury. Injury and causation are required elements of a negligence claim. (*Tribeca Companies, LLC v. First American Title Ins. Co.* (2015) 239 Cal.App.4th 1088, 1114.) In this case, according to the complaint and the evidence, Miller received actual notice (from Portillo) of the notice of default around one or two months after it was recorded, and he knew of C&H's involvement at that time.[6]

---

[6] Miller's appellate briefing essentially acknowledges that any failure to mail him a copy of the Notice of Trustee's Sale caused no legal injury. His opening brief on appeal explains the notice of sale allows a junior lienholder to "assess the available equity in the property and determine whether to take steps to cure the default and protect its junior position. *That is, in fact, exactly what Respondent did in this case. . . .*" (Italics added.)

Based on this actual knowledge, Miller was able to assess the notice of default. He then attempted to negotiate or clarify matters with Macias and successfully restrained the foreclosure proceedings. As C&H argued in the trial court, the complaint does not identify any injury Miller suffered as a result of C&H's alleged failure to mail him notice of the issuance and recording of default or the substitution of trustee. Miller's appellate briefing similarly fails to offer any theory to explain how C&H's alleged failure to give the statutorily-required notice to him caused him injury, as required to establish a claim for negligence. (See e.g., *Falcochia v. Saxon Mortgage, Inc.* (E.D.Cal. 2010) 709 F.Supp.2d 860, 870 [harmless violation of section 2924b was not actionable].)

Miller failed to raise an issue of material triable fact to as to the negligence claim against C&H. The trial court properly granted summary judgment.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.

17