Filed 11/17/23  Schwartzman v. South Coast Tax Resolution CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| VAN SCHWARTZMAN, | B314770 c/w B320410 |
| Plaintiff and Appellant, |  |
| v. | (Los Angeles County Super. Ct. No. 21STCV01307) |
| SOUTH COAST TAX RESOLUTION, INC. et al., |  |
| Defendants and Respondents. |  |

APPEAL from an order of the Superior Court of Los Angeles County.  Barbara Ann Meiers, Judge.  Dismissed with sanctions.

Law Office of Reshma Kamath and Reshma Kamath for Plaintiff and Appellant.

Thompson Coburn, Yael Tobi and Jeffrey N. Brown for Defendants and Respondents.

—————————————

In a confusing and at times unintelligible opening brief, plaintiff and appellant Van Schwartzman (Schwartzman) purports to appeal from, among other things, the trial court's order dismissing his case against defendants and respondents South Coast Tax Resolution, Inc.; Ryan Eric Born; and Sandra Wolfe (collectively respondents). However, Schwartzman's notice of appeal only challenges an earlier interlocutory order denying various motions, including his motion to seek leave to amend a then-pending motion to strike respondents' cross-complaint to include grounds under California's anti-SLAPP statute[1] (Code Civ. Proc., § 425.16).[2] Because that order is nonappealable, we dismiss this appeal. We also order appellant's counsel, Reshma Kamath (Kamath) to pay sanctions to respondents in the amount of $5,000 and to the court in the amount of $5,000.

**PROCEDURAL BACKGROUND**

## I. Complaint, Cross-Complaint, and Related Motions

In January 2021, Schwartzman filed a complaint against respondents, alleging multiple claims stemming from their failure to provide him with adequate tax services.[3] On February 18, 2021, respondents filed a cross-complaint against

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813, overruled in part on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5.)

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] The record does not contain a copy of the original complaint.

2

Schwartzman for breach of contract and the implied covenant of good faith and fair dealing, intentional interference with prospective economic relations, and libel.

On March 26, 2021, Schwartzman filed a motion to strike the cross-complaint, arguing that it failed to sufficiently state any cause of action against him. The motion to strike argued that respondents' libel claim purported to sue Schwartzman for the constitutionally protected act of filing a lawsuit, but did not invoke the anti-SLAPP statute.

On April 20, 2021, Schwartzman filed a substitution of attorney form, substituting Kamath for his former attorney, David R. Griffin (Griffin).[4]

On or around April 21, 2021, the trial court moved sua sponte to strike the pleadings or portion of the pleadings (§ 436) and for judgment on the pleadings (§ 438).[5] Schwartzman opposed both motions. In his opposition, he accused the trial judge of "engaging in dilatory tactics, and condescending attitude and remarks to [Kamath] during hearings[,]" and characterized the motion for judgment on the pleadings as stemming solely from the trial judge's "bias" and "flippant attitude." Schwartzman also "demand[ed]" that the trial judge "be recused from this matter[.]"

---

[4] Prior to the submission of this substitution form, Griffin and Kamath had worked together on some motions. From this point onwards, Kamath is the sole attorney appearing for Schwartzman.

[5] The record does not contain a transcript of the hearing(s) or a copy of the minute order(s) in which these motions were made.

3

## II. The June 23, 2021 Hearing

A hearing on Schwartzman's motion to strike was originally scheduled for April 2021, but the hearing was continued until June 23, 2021.

The day before the hearing, Schwartzman filed a motion seeking leave to amend his pending motion to strike "to include [section] 425.16, California anti-SLAPP statute."

On the day of the hearing, Schwartzman also filed a motion purporting to seek recusal of the trial judge, arguing that she should be disqualified for "demonstrat[ing] bias against [Schwartzman] and/or their counsel and in favor of [respondents] and/or their counsel" at prior hearings.[6] Among other things, Schwartzman accused the trial judge of "**play[ing] 'third attorney'** in this matter**, instead of an unbiased and impartial judge,** in compelling [Schwartzman] to file an [o]pposition to [the trial court's] sudden . . . Motion for Judgment-on-the-Pleadings" (bolding in original).

At the hearing, the trial court expressed concern about Schwartzman's "rather disturbing opposition to the motion for judgment on the pleadings, which engages in a lot of negative comments about me and my role in the case[.]" The court briefly described the purpose of sections 436 and 438, before explaining at length the fatal flaws in both parties' pleadings which prompted the court's sua sponte motions.

Kamath interrupted the court's presentation twice, asking for an opportunity to be heard.[7] The trial court asked her to

---

[6] The record does not contain any account of these prior hearings.

[7] Kamath attended the hearing remotely via Court Connect.

4

"[w]ait until I'm finished and then everybody will have a chance to say whatever they want to say."

After concluding its opening remarks, the trial court solicited argument on the cross-complaint from respondents' trial counsel. Kamath again interrupted. She "object[ed] . . . [to] the conversation between you and [respondents' trial counsel]" because "[w]e have a motion to recuse you filed on calendar. So based on this—any of your substantive comments today . . . any of your dialogue right now—is demonstrating partiality, further, must be stopped because we have a motion to recuse you."

The trial court informed Kamath that it was "not aware of any such motion." Kamath insisted that the motion "was filed" and "will be served in your chambers." She objected again to the trial court's "substantive comments" before asserting that she had "provided [the trial court] a chance to speak." The trial court then interjected, "[e]xcuse me. You don't provide me with opportunity to speak. I'm afraid it works the other way. So I'm going to finish hearing . . . [¶] . . . what [respondents' trial counsel] was trying to say."

The trial court continued its colloquy with respondents' trial counsel, who eventually stated that respondents would "dismiss the cross-complaint without prejudice." Kamath again interrupted, prompting the trial court to ask her to "please try to restrain yourself."

Kamath soon interrupted yet again, asking "may [Schwartzman's] counsel finally speak on anything . . . [¶] . . . substantive?" The trial court asked her to "wait for a moment, please." Kamath interjected that she had "been waiting. And I only . . . for the last 20 minutes hear a dialogue between the two of you." The trial court explained that it wanted

to "get through these points" on the cross-complaint before hearing argument from Kamath. Kamath responded that "it's surprising that you let [respondents' trial] counsel speak first before [Schwartzman's] counsel if [Schwartzman] brought the complaint."

The trial court wrapped up its discussion with respondent's trial counsel, then asked to hear from Kamath. Kamath began by arguing that the trial judge "must recuse [her]self from making any ruling today" because "there is a motion for recuse on file."

The trial court explained the process of disqualification under section 170.3, explaining that "[y]ou do not make a motion. . . . [¶] . . . you have to file what is called a verified statement." It deemed Kamath's comments as a request for the trial judge to disqualify herself and declined to do so, then advised that Schwartzman could proceed with filing a verified statement if he chose.[8]

Kamath argued with the trial court, claiming that she had attached a verified statement to the motion seeking recusal and insisting that the motion precluded the trial court from making any rulings at the hearing. The trial court found that "[t]here is no impediment to my taking whatever action the court deems appropriate this morning" and asked Kamath to move on to another point.

---

[8] On June 30, 2021, the trial court issued a lengthy ruling and order striking Kamath's motion, and, in the interest of caution, attached a verified answer to the charges of bias "just in case any forum might decide that this striking of the filing made is not sufficient and that this Motion is and was a filing under Section 170.3, and that the striking herein has been done in error." From the record, it appears that no further action was taken to disqualify the trial judge.

Instead, Kamath returned to her disqualification arguments. The trial court again explained the statutory disqualification process, and again asked Kamath to move on. Kamath continued to insist that the trial court "continue this hearing and not make any substantive rulings." For a third time, the trial court asked Kamath to "move on to your next point."

Kamath then accused the trial court of "demonstrat[ing] some bias in saying" things like "'I know [how] you feel'" and "'I'm sorry'" to respondents' counsel earlier in the hearing.

Only then did Kamath turn to arguments on the merits. Among other things, she suggested that respondents should not be permitted to voluntarily dismiss their cross-complaint when Schwartzman had a pending motion to strike, as well as a motion for leave to amend that motion to strike to include anti-SLAPP grounds.

After Kamath had presented several arguments, the trial court interrupted her to organize other matters pending on its morning calendar. Kamath objected, prompting the following exchange:

"MS. KAMATH: Your Honor, you're doing this again. You're doing this again. I make a point, and you start talking about other things.

"THE COURT: Would you please—

"MS. KAMATH: You have to recuse yourself. . . . This is the second time you're doing this.

"THE COURT: Ms. Kamath—

"MS. KAMATH: I made substantive argument.

"THE COURT: —[Y]ou—

"MS. KAMATH: And you start talking about recess—[9]

---

[9] The trial court had not said anything about a recess.

7

"THE COURT: You do not control—

"MS. KAMATH: —[A]nd other—and other matters, your Honor. [¶] . . . [¶]

"THE COURT: —[T]he calendar of this court. Stop speaking.

"MS. KAMATH: Your Honor, this is the second time you are doing this.

"THE COURT: Stop speaking. I have other—

"MS. KAMATH: I was speaking.

"THE COURT: —[P]eople—

"MS. KAMATH: And you started—

"THE COURT: —[I]n this courtroom.

"MS. KAMATH: This is not okay.

"THE COURT: You are not entitled to sit there and yell at me and tell me—

"MS. KAMATH: Your Honor, you aren't entitled to start talking—

"THE COURT: There are people in this courtroom, ma'am. The people in this courtroom are shaking their heads—literally shaking their heads—at you while—

"MS. KAMATH: Your Honor, I'm shaking my head—

"THE COURT: —[Y]ou speak.

"MS. KAMATH: —because this is continued from April. This is June.

"THE COURT: You have to control yourself.

"MS. KAMATH: You're portraying yourself in a positive light. They don't know—

"THE COURT: You have to control yourself.

"MS. KAMATH: —what you have done, your Honor.

"THE COURT: All right.

"MS. KAMATH:  Let them shake their heads as much as they want."

The trial court attempted to proceed, but Kamath continued interrupting both the court and other attorneys attempting to answer the court's questions.  Eventually, the trial court ordered its staff to place Kamath's line on mute.  Regardless, Kamath soon continued her volley of interruptions; a member of the trial court's staff told the court that Kamath "continues to unmute her microphone even though we placed her on mute."

The trial court told Kamath that "[w]e're still going to continue with Schwartzman, if you will please be patient, ma'am."  Kamath started to object, and the court ordered its staff to "[m]ute it again.  Mute it, please."

The trial court quickly finished its conversation and invited Kamath to continue with her arguments.  When the subject of Kamath's pending motions arose, the trial court noted that it was not aware of any pending anti-SLAPP motion.  Kamath responded that "we have a motion to leave to amend to include the anti-SLAPP[.]"

After Kamath finished, the trial court took the matter under submission.

### III.   The Parties' Subsequent Motions

The hearing concluded at 11:16 a.m.  At 12:34 p.m., Schwartzman filed two identical "Motion[s] for California Anti-SLAPP[.]"  The motions purported to "move for [a] Motion . . . pursuant to the . . . California anti-SLAPP statute" and stated that "[t]his will apply to the original Motion-to-Strike filed on April 21, 2021."  The attached memoranda said that Schwartzman was "bring[ing] th[ese] motion[s] under . . . [the]

9

California anti-SLAPP" statute, but also "request[ed] this Court leave to amend to include California ANTI-SLAPP . . . in his Motion-to-Strike[.]"

That same day, respondents filed a motion to dismiss the cross-complaint.

Respondents later opposed Schwartzman's purported anti-SLAPP motions, arguing, among other things, that they were moot and untimely.

Schwartzman filed a supporting motion, in which he conceded that "[o]n the motion-to-strike filing, [he] was inadvertent in not including this anti-SLAPP motion . . . . Yet, based on the motion-to-strike, and subsequent pleadings, [Schwartzman] remains compelled to include the anti-SLAPP motion." He "request[ed] this Court to include the anti-SLAPP provisions" in his original motion to strike "at the time of filing, and on the date of hearing, i.e., April 21, 2021" using the court's "'inherent power to enter judgments *nunc pro tunc* so as to relate back to the time when they should have been entered.' [Citation.]"

## IV.    Cross-Complaint Dismissed

On June 29, 2021, the trial court entered dismissal on the cross-complaint.

## V.    The August 2, 2021 Order

On August 2, 2021, the trial court denied all pending motions in the case, including Schwartzman's motion to strike, his motion for leave to amend his motion to strike to include anti-SLAPP grounds, and his "'anti-slapp' [*sic*] motion[.]"[10] The court explained that Schwartzman's motions were "denied because they

---

[10]    The trial court also denied its pending motions under sections 436 and 438.

10

are all moot.  They are all directed to seeking to strike various aspects of the [respondents'] once filed cross-complaint, but that Cross-Complaint having been dismissed before the filing of the anti-slapp [*sic*] motion and before any hearing of any of [Schwartzman's] other motions to strike or to amend which would serve to no purpose other than to 'attack' the Cross-Complaint, [Schwartzman's] motions are now immaterial and all moot."

## VI.    Appeal

Schwartzman timely filed a notice of appeal challenging the August 2, 2021 order.  He checked a box indicating that the order was appealable under section 904.1, subdivision (a)(3)–(13).

Meanwhile, the case proceeded through the trial court.  On April 5, 2022, Schwartzman filed a second notice of appeal from an order establishing that, since Schwartzman had not timely filed an amended complaint, a prior order granting judgment on the pleadings had become final (the second appeal).

On August 29, 2022, Schwartzman filed a motion to consolidate both appeals.  We granted the motion.  However, the trial court subsequently issued a notice of default on the second appeal because Schwartzman did not timely pay the required fees to obtain the record from the trial court.  We then dismissed the second appeal.  (Cal. Rules of Court, rule 8.140(b)(1).)

Schwartzman moved to vacate our dismissal.  Respondents filed an opposition.  We denied the motion to vacate, and the order challenged in the second appeal became final as of January 24, 2023

## DISCUSSION

### I.    Dismissal

As an initial matter, we must determine whether we have jurisdiction to consider this appeal.  It is well-established that

11

our jurisdiction extends only to appealable judgments and appealable orders. (*Griset v. Fair Political Practices Comm.* (2001) 25 Cal.4th 688, 696.) If "the order is not appealable, we must dismiss the appeal." (*Reddish v. Westamerica Bank* (2021) 68 Cal.App.5th 275, 277.)

Schwartzman's operative notice of appeal challenges the trial court's August 2, 2021 order, denying his conventional motion to strike and his motions requesting leave to amend the motion to strike to include anti-SLAPP grounds. This type of order is not appealable without express statutory authorization. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754 ["The right to appeal in California is generally governed by the 'one final judgment' rule, under which most interlocutory orders are not appealable"].)

The notice of appeal avers that the challenged order is appealable under subdivision (a)(3)–(13) of section 904.1. The only part of that statute notionally relevant to the challenged order is subdivision (a)(13), which permits appeals "[f]rom an order granting or denying a special motion to strike under [section] 425.16[,]" California's anti-SLAPP statute.

The filing of an anti-SLAPP motion is a necessary prerequisite to an appealable order granting or denying it. Here, Schwartzman never filed a viable anti-SLAPP motion. Instead, he filed a conventional motion to strike, which did not invoke the anti-SLAPP statute, and then filed several motions requesting leave to amend that motion to strike to include the anti-SLAPP.[11]

_____

[11]    Each of these motions, including the ones titled "Motion for California Anti-SLAPP", request leave to amend. But even if we construed these papers as anti-SLAPP motions, they would still be invalid as untimely. Schwartzman did not file the first of

12

And, in his final filing on the issue, Schwartzman admitted that he had not filed a timely anti-SLAPP motion due to "inadverten[ce,]" and thus needed the trial court's intervention to render any of his purported anti-SLAPP motions viable.

Because Schwartzman never filed a viable anti-SLAPP motion, his appeal is not authorized by section 904.1, subdivision (a)(13). Nor does any other statute grant us jurisdiction over this interlocutory appeal. Accordingly, we must dismiss the appeal.

Schwartzman raises four arguments against our conclusion. All four are meritless. <u>First</u>, he argues that "since the [challenged] Order ruled on [his] anti-SLAPP arguments, it should be construed as an order denying an anti-SLAPP motion[.]" But he cites no legal authority that would permit us to treat the denial of his motions for leave to amend as a denial of an anti-SLAPP motion. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 287 (*City of Santa Maria*) ["[W]e may disregard conclusory arguments that are not supported by pertinent legal authority"]; see also *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619–620 (*L.O.*)["[A]ppellant must do more than assert error and

_____

these motions until June 22, 2021, 124 days after the cross-complaint was filed. (§ 425.16, subd. (f) [an anti-SLAPP motion "may be filed within 60 days of the service of the [challenged] complaint or, in the court's discretion, at any later time upon terms it deems proper"]; see also *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 645 ["[S]ection 425.16, subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion)"].) Because the trial court never exercised its discretion to permit a late anti-SLAPP filing, it follows that no anti-SLAPP motion was filed.

13

leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities[.] [Citations.]' [Citation.]"

Second, Schwartzman contends that the instant appeal is not interlocutory because it was consolidated with the second appeal, which was taken from a final judgment. Although he recognizes that the second appeal was dismissed, he insists that "the fact of the consolidation of the two appeals" is sufficient to save this appeal from dismissal.[12] Again, Schwartzman cites no legal authority supporting the idea that a dismissed appeal from a final judgment provides any jurisdictional basis for an interlocutory appeal with which it was once consolidated. (*City of Santa Maria, supra*, 211 Cal.App.4th at p. 287; *L.O., supra*, 96 Cal.App.5th at pp. 619–620.)

Third, Schwartzman asserts that the challenged order is appealable under section 906. That section does not provide an independent basis for appealability, but only establishes that "*[u]pon an appeal pursuant to [s]ection 904.1 or 904.2*, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party." (§ 906 [italics added].) Schwartzman does not explain how this statute could authorize his appeal. (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["[A]n appellant

---

[12] To the extent that Schwartzman argues that the second appeal was erroneously dismissed, he improperly attempts to relitigate a decision that was made final in January 2023.

14

is required to not only cite to valid legal authority, but also explain how it applies in his case"].)

Lastly, Schwartzman asks us to liberally construe his notice of appeal. But the policy of liberally construing a notice of appeal in favor of its sufficiency to permit review of the merits (Cal. Rules of Court, rules 8.100(a)(2), 8.406(d)) does not apply to a notice of appeal that expressly targets a nonappealable order. (See *Winter v. Rice* (1986) 176 Cal.App.3d 679, 683 ["While there is a well recognized policy in favor of resolving appeals on their merits [citation], this court has no power to make appealable an order which is nonappealable"]; see also *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 ["'An attempt to appeal from a nonappealable order does not give this court jurisdiction or authority to review it.' [Citation.]"].)

## II.    Sanctions

### A.    Additional Relevant Procedural History

On September 28, 2023, respondents moved to sanction Schwartzman and Kamath in the amount of $50,111.28, which is the amount respondents claim it has cost them to prepare this appeal. Among other things, respondents argue that this appeal is sanctionable because it is frivolous, as it was "taken from a[] **non-appealable order**[,]" and because Schwartzman's appellate briefs embark on a "vitriolic crusade against the judiciary—a crusade unrelated to the merits of any substantive issue on appeal—[which] violates California's civility guidelines" (bolding in original).

As to the latter point, respondents cite numerous outrageous statements made against the trial court in Schwartzman's briefs, including that the trial judge:  (1) "acted as a judicial bully" and employed "judicial tricks" to "scar[e]"

15

Schwartzman and "forc[e]" him to file motions against his better judgment; (2) repeatedly engaged in "Pro-White/Pro-Male behavior" and "Judicial Bullyism[;]" (3) "shap[ed] the case to favor [r]espondents, and their white attorneys" by "coach[ing]" respondents' trial counsel to dismiss their cross-complaint, because the trial judge is a "homogenous and ivory pedagogy-type judicial officer" looking to deny Kamath a victory on her motions; (4) engaged in "constant sadistic harassment of a young female attorney [i.e., Kamath]" by "wielding her judicial power to do whatever she wants[,]" and "spewed her bias in [a] case where she sees a person of color [i.e., Kamath] [;]" and (5) "hired a light-skinned Latin clerk" and "often demonstrates her prejudice to immigrants and tanner-toned attorneys and litigants." She also attacked this court, blaming "P[residing] J[ustice] Liu [*sic*] and his incompetent, prejudicial court staff" for the default that led to the dismissal of Schwartzman's second appeal, and the California judiciary at large, accusing courts of harboring a "lax attitude, circumventing of the code and rules, and . . . protecting from shame to[o] many-a-white, and/or male attorneys" such that "it is unbelievable that the courts are not in complete shambles."

On October 3, 2023, we sent notice to both parties that we would consider sanctioning Schwartzman and/or Kamath, either pursuant to respondents' motion for sanctions or on our own motion, and invited Kamath to "file a supplemental letter brief addressing the propriety of sanctions" to be "no more than 1500 words[.]" On October 16, 2023, Kamath filed a brief purporting to respond to the sanctions issue; however, it was 9477 words long. Accordingly, we rejected the filing, but gave Kamath an additional five days to submit a compliant brief.

16

Instead, Kamath accused a clerk of this court of "discriminatorily rejecting a time-sensitive filing" and threatened to sue both the clerk and the court. She then immediately attempted to refile the rejected brief as an attachment to a document titled "NOTICE *RE* TIMELY-FILING OF AN OPPOSITION AND LETTER[.]" The notice insisted that the rejection of the brief was part of a pattern of "constant discrimination against APPELLATE COUNSEL RESHMA KAMATH[,]" and that "[t]he PRO-WHITE sentiments and discrimination at the appellate level is only reflective of the California courts, and California societies."

On October 24, 2023, Kamath filed a request to continue oral argument in this case.[13] The request again accused the clerk of rejecting Kamath's filings "purely based on her racist intent . . . . As much as Latin-American women demonstrate hatred and racism towards Indian/Indian-American women in America, [the clerk] has demonstrated the same."[14]

On that same day, Kamath filed another document titled "NOTICE RE DEFENDANT-JUSTICE ASHMANN-GERST'S RACIALLY-MOTIVATED ORDER[.]" In it, she argued that

---

[13] We denied the request to continue for lack of good cause. (Cal. Rules of Court, rule 8.60(b).) Kamath did not appear for oral argument.

[14] Kamath attempted to support this claim by arguing that the clerk, "on October 17, 2023, . . . accepted the filing of the White/Caucasian attorneys in this case[,] [t]hus making the White/Caucasian attorneys look like first-filers[.]" We note that respondents' counsel did not file any papers in this case on October 17, 2023.

17

Presiding Justice Lui and Justice Ashmann-Gerst "are PRECLUDED from ruling on any actions where APPELLANT'S COUNSEL participates as counsel[,]" because they are "racially/ethnically motivated[,]" and/or "strayed far away from their ministerial duties engaging in their PERSONAL BIASES, AND PREJUDICES."[15]

On October 27, 2023, Kamath attempted to file a document entitled "NOTICE *RE* JUDICIAL MISCONDUCT AND APPEARANCES OF JUDICIAL IMPROPRIETY[.]" The notice accused multiple Justices of potentially engaging in improper behavior, including: (1) financial and/or political involvement with agents of foreign governments; (2) supporting Christian and religious groups that "directly, and/or indirectly, provide any funding/contributions/donations to local chapters such as Proud Boys[;]" (3) harboring biases "in favor of attorneys practicing the Jewish faith that JUSTICES . . . blindly support in cases where [Kamath] is against[;]" and (4) having "minimal involvement with Indian/Indian American/Hindu individuals and/or attorneys in their entire lifetimes."

A clerk of this court rejected the filing, advising that "[c]omplaints against any justice of the Court of Appeal may be submitted through the Commission on Judicial Performance[.]"

Kamath then e-mailed the clerk, objecting to the rejection by saying that it was "highly improper for [her] to act such as this as you're a non-lawyer clerk. [¶] Please refrain from your on-going racism towards me[.]" Kamath also sent an e-mail to the clerk and multiple justices of this court, complaining that the clerk "has demonstrated open and invidious racism" and thus

---

[15] Kamath also included another Justice from a separate division, who is not involved in this case, in these accusations.

18

"must refrain from any kind of action on any of my work and filed cases based on [the clerk's] tangible/objective acts of racism . . . towards me."

## B. Applicable Law

Although this power should be used sparingly, monetary sanctions may be awarded against an appellant and/or his counsel for taking a frivolous appeal. (§ 907; Cal. Rules of Court, rule 8.276(a)(1).)

In particular, sanctions against an appellant's counsel "are appropriate when . . . counsel had a professional obligation not to pursue the appeal or should have declined the case outright. [Citation.]" (*Malek Media Group, LLC v. AXQG Corp.* (2020) 58 Cal.App.5th 817, 837 (*Malek Media Group*).)

An appeal is frivolous when it "was prosecuted for an improper motive" or "indisputably has no merit"—that is, "'when any reasonable attorney would agree that the appeal is totally and completely without merit.'" (*Singh v. Lipworth* (2014) 227 Cal.App.4th 813, 826; quoting, *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 (*Flaherty*).) To determine whether an appeal is frivolous, we apply both an objective standard, analyzing the merits of the appeal, and a subjective standard, examining the motives of appellant and his counsel. (*Id.* at pp. 649–650.) "A finding of frivolousness may be based on either standard by itself, but the two tests are ordinarily used together, with one sometimes providing evidence relevant to the other." (*Malek Media Group, supra*, 58 Cal.App.5th at p. 834.)

"When deciding the amount of sanctions to impose, courts may consider 'the amount of respondent's attorney fees on appeal; . . . the degree of objective frivolousness and delay; and the need for discouragement of like conduct in the future[,]'" (*Keitel v.*

19

*Heubel* (2002) 103 Cal.App.4th 324, 342), as well as the cost to taxpayers of processing an appeal that results in an opinion (*Workman v. Colichman* (2019) 33 Cal.App.5th 1039, 1065).

**C.    Analysis**

We find that Kamath's egregious conduct merits monetary sanctions.

To begin, this appeal is patently frivolous.  As described above, the appeal is taken from a nonappealable order.  Moreover, this appeal is also moot.  An appeal is moot if the appellate court cannot "'grant[] any effectual relief[,]'" defined as the "'prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status.' [Citation.]" (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1053.) Here, Schwartzman has already received the relief that his denied motions could provide if revived, because the cross-complaint targeted by those motions has long since been voluntarily dismissed.  If we granted the relief he requests, there would be no "'practical, tangible impact'" on this case whatsoever. (*Ibid*.)

Under these circumstances, any "reasonable person would 'agree that th[is] appeal is completely devoid of merit.' [Citation.]"  (*In re Marriage of Deal* (2022) 80 Cal.App.5th 71, 80; see also *Malek Media Group*, *supra*, 58 Cal.App.5th at p. 836 ["A complete lack of merit is evidence that the appellant brought the appeal for the purpose of delay"].)

Yet Kamath persisted in prosecuting the appeal, baselessly arguing that the dismissed second appeal provided a basis for jurisdiction and that the challenged order should be viewed as

20

the denial of an anti-SLAPP motion.[16]  Her decisions caused the court to "waste[] its time and resources considering [the] appeal, which has only served as a drain on the judicial system and the taxpayers of this state."  (*Malek Media Group*, *supra*, 58 Cal.App.5th at p. 837.)

Equally telling is Kamath's outrageous conduct throughout this case.  (*Flaherty*, *supra*, 31 Cal.3d at p. 649 [the subjective standard for assessing frivolousness "looks to the motives of . . . counsel"]; see also *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 7 [a person's "conduct [is] relevant evidence from which inferences can be drawn regarding [her] motives in . . . litigating a lawsuit"].)

For over two years, Kamath has persisted in a troubling pattern of behavior in which, from the moment she is given an indication that things may not pan out for her client, she unleashes a flood of unsupported claims of bias in an attempt to disqualify the presiding tribunal and delay any potential adverse rulings.

In this case, the flood commenced when, after the trial court moved sua sponte to strike the pleadings or portion of the pleadings, Kamath suddenly accused the trial judge of bias and "demand[ed]" that she "be recused from this matter[.]"  Kamath

---

[16]  Confusingly, in the same brief in which Kamath attempts to characterize the challenged order as functionally equivalent to an order denying an anti-SLAPP motion, she argues that Schwartzman "had no intention of filing any kind of anti-SLAPP motion against the Cross-Complaint[,]" "nor did [he] want to seek leave to amend to include any type of special motion to strike." Instead, Kamath insists that the trial court "forced" her to file a "judge-ordered leave-to-include anti-SLAPP that [Schwartzman] never wanted to file."  The record does not support these claims.

repeated these claims several times, including in the motion to recuse the trial judge, during her combative performance at the June 23, 2021 hearings, and in the appellate opening and reply briefs.

To the extent that Kamath provides any evidence for these claims of bias, she cites incidents ranging from mere adverse rulings (actual or potential) to spurious claims that the trial judge "coached" the respondents' trial counsel to dismiss their cross-complaint and engaged in preferential hiring practices.[17] None of these points supports a good faith claim of bias. (See, e.g., *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 ["The mere fact that the trial court issued rulings adverse to [a party] . . . , even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias"].)

This conduct alone suggests that Kamath prosecuted this appeal for improper motives. (See *In re S.C.* (2006) 138 Cal.App.4th 396, 422 ["Disparaging the trial judge is a tactic that is not taken lightly by a reviewing court. Counsel better make sure . . . she has the facts right before venturing into such dangerous territory because it is contemptuous for an attorney to make the unsupported assertion that the judge was 'act[ing] out of bias toward a party.' [Citation.]"].)

But Kamath doubled down, using her appellate briefs as a platform to groundlessly disparage the trial court, this appellate

---

[17] As described above, the record does not support Kamath's assertion regarding any biased coaching of respondents' trial counsel during the June 23, 2021 hearing. While the trial court did give guidance to respondents' trial counsel, Kamath received just as much (if not more) judicial advice.

court, and the legal system as a whole.  Such disparagement is both improper and ineffective.  Appellate briefs provide an opportunity to present cogent legal arguments; they are "not an appropriate vehicle for an attorney to '"vent h[er] spleen[.]"'" (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 674, fn. 3.)

Kamath repeated this cycle of behavior in this court.  After appellate briefing concluded and respondents filed their motion for sanctions, we issued notice that we would consider imposing monetary sanctions and rejected Kamath's noncompliant brief. Kamath responded by disparaging the court and its staff in numerous filings and e-mails, which included threats to sue the court.  Her groundless allegations of judicial bias quickly escalated to wild claims of individual justices' potential involvement with, inter alia, foreign government agents and violent hate groups such as the Proud Boys.

"The Court of Appeal is not an appropriate forum to peddle far-fetched conspiracy theories . . . disguised as a legitimate appeal.  Nor is it a forum to launch personal attacks against" judicial officers or court staff.  (*Malek Media Group*, *supra*, 58 Cal.App.5th at pp. 835–836.)  This type of conduct is sanctionable.  (*Id.* at p. 836 [sanctions are appropriate against a party who "adopt[s] a war-like mentality toward . . . anyone else involved with [a] case" and where "[t]he record is replete with personal attacks . . . as well as numerous unsubstantiated claims that everyone who was purportedly against [the party] was engaged in an elaborate conspiracy to destroy h[er]"].)

Kamath's conduct is not becoming of an attorney.  "[I]t is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and

professionalism in the practice of law. In order to instill public confidence in the legal profession and our judicial system, an attorney must be an example of lawfulness, not lawlessness. [¶] Accordingly, an attorney, 'however zealous in [her] client's behalf, has, as an officer of the court, a paramount obligation to the due and orderly administration of justice . . . .' [Citation.] An attorney must . . . maintain a respectful attitude toward the court. [Citations.]" (*People v. Chong* (1999) 76 Cal.App.4th 232, 243; see also *Snoeck v. ExakTime Innovations, Inc.* (Oct. 2, 2023, B321566) ___ Cal.App.5th ___ [2023 Cal.App.LEXIS 5855, at pp. *21–*28] [as an officer of the court, an attorney owes the court and opposing counsel professional courtesy], Cal. Bus. & Prof. Code, § 6068, Cal. State Bar, California Attorney Guidelines of Civility and Professionalism (2007), § 4.)

By turning her client's case into a showcase for her conspiracies of personal persecution, Kamath has done a disservice to Schwartzman and to the courts. And, in our view, her conduct certainly warrants sanctions.

When considering the amount of sanctions, we find that the degree of objective and subjective frivolousness in this appeal is extremely high, and our desire to discourage conduct like Kamath's is very strong. As discussed above, there are two bases for imposing monetary sanctions in this case. First, this appeal completely lacks merit. Second, Kamath's unreasonable behavior is further evidence that she has abused the appellate process for improper reasons. Reflecting these considerations, we sanction Kamath in the amount of $10,000, with $5,000 payable to respondents and $5,000 payable to this court. "This opinion constitutes a written statement of our reasons for imposing

24

sanctions." (*Huschke v. Slater* (2008) 168 Cal.App.4th 1153, 1164.)

## DISPOSITION

The appeal is dismissed.  Respondents are entitled to costs on appeal.  Schwartzman's counsel, Reshma Kamath, is assessed a total of $10,000 in sanctions, with $5,000 payable to respondents and $5,000 payable to the Court of Appeal in care of the clerk of this court no later than 15 days after the date of the remittitur is filed.  The clerk of this court is directed to deposit said sum in the general fund.

Reshma Kamath is also ordered to report the sanctions to the State Bar of California.  (Bus. & Prof. Code, § 6068, subd. (o)(3).)  The clerk of this court is directed to forward a copy of this opinion to the State Bar of California.  (Bus. & Prof. Code, § 6086.7, subd. (b).)

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:



_____, P. J.
LUI



_____, J.
HOFFSTADT

25